STATE OF VERMONT

ENVIRONMENTAL COURT

}
In re: Hubbard Subdivision      }      Docket No. 207-8-06 Vtec
     (Appeal of Cook, <u>et al.</u>)      }
}

<u>Decision and Order on Appellee-Applicants' Motion for Summary Judgment</u>

Appellants Constance Cook, and her brother and sister-in-law Edward Dumas and Rosita Dumas, appealed from a decision of the Planning Commission of the Town of Rutland dated August 17, 2006, approving a two-lot subdivision proposed by Appellee-Applicants Tracy and Nancy Hubbard. Appellants are represented by Kevin Candon, Esq.; Appellee-Applicants are represented by Matthew Branchaud, Esq.

Appellee-Applicants have moved for summary judgment, seeking dismissal of all six questions in Appellants' Statement of Questions, but also stating that Question 6 may go forward to hearing "if tailored correctly." The following facts are undisputed unless otherwise noted.

All of the parties own land in the Town of Rutland accessed from Perkins Road; none of the parties' lots has frontage on Perkins Road.

Appellee-Applicants own a 13.1-acre parcel of land containing their house, which they purchased in 2000 from Jeffery and Kimberly (daughter of Appellants Dumas) Elnicki. Property now or formerly owned by the Rutland Fire Clay Company adjoins the Hubbard property to the north. Appellant Cook's property adjoins the Hubbard property to the west. The property of Edward II and Shelley A. Dumas (son and daughter-in-law of Appellants Dumas, not involved in this litigation) adjoins the Hubbard property to the southeast. Other property of the Hubbard family, owned by a family trust and occupied by Appellee-Applicant Tracy Hubbard's father (not involved in this litigation) adjoins the

1

Hubbard property to the southwest. The property of Appellants Dumas adjoins the Hubbard property to the north and east. In addition, Appellants Dumas own property to the north of the Rutland Fire Clay Company property, between it and Perkins Road, that is not at issue in this litigation.

Access to Perkins Road from Appellant Cook's property is via a separate private road not at issue in this litigation.

Access to Perkins Road for the remainder of the litigants is via a private road now known as Dailey Place, which runs from Perkins Road across Appellants Dumas' other property, then across the land now or formerly of the Rutland Fire Clay Company, and serves lands south of that property. The Rutland Fire Clay Company executed an easement deed for this easement in 1987, the Grantees of which were Jeffery and Kimberly Elnicki, Edward and Shelley Dumas II, and Edward and Rosita Dumas. Condition 2 of the easement deed states that the "easement shall provide access to a maximum of three (3) residences including the present residence of Edward and Rosita Dumas, and residences to be constructed by Edward and Shelley Dumas II, and Jeffery and Kimberly Elnicki." Condition 5 of the easement deed states that "Grantees shall not use said easement for commercial purposes."

There appear to be three residences using the Dailey Place easement: the then-"present residence" of Appellants Dumas referred to in the deed, that of the Hubbards, and that of Edward II and Shelley A. Dumas, to the south of the Hubbard Lot.

Appellee-Applicants' propose to subdivide their 13.1 acre parcel into Lot 2A (a 9.7-acre unimproved parcel) and Lot 2B (the 3.4-acre parcel containing their residence). Approximately five acres of Lot 2A is now fenced and houses twenty-two New Zealand Red Deer. Lot 2A is not proposed for any construction or further development. Adjoining Lot 2A to the south are lands of the Hubbard family, owned by a trust and occupied by Appellee-Applicant Tracy Hubbard's father, who has applied for a subdivided two-acre

2

lot to be located immediately to the south of Lot 2A.

Lot 2A contains a drilled well serving the Hubbard house, the water line for which runs along the easement of Dailey Place to the Hubbard house.

Lot 2A contains an existing shallow well, close to its northerly boundary and within the fenced deer area; the well serves Appellants Dumas' house. Another shallow well, serving the Cook property, is located just to the north of the Lot 2A property line. Appellee-Applicants dispute Appellant Cook's right to have a pipe from this well to her property run across their property. Both shallow wells are contaminated with E. coli bacteria. Facts are disputed as to whether the contamination is inherent in shallow wells of these types, or whether the contamination is due to the deer or to other animals in the vicinity.

Questions 1, 2, 4 and 5 relating to the terms of the easement

Questions 1 and 2 ask whether the Court should deny subdivision approval "because it would create a landlocked parcel," either "because the easement granting access to the premises forbids commercial use of the premises" (in the case of Question 1) or because it is "limited to three residences" (in the case of Question 2). That is, Appellants argue that the subdivision should be denied because Appellee-Applicants will not have the right under the easement deed to construct a residence on undeveloped Lot 2A unless access were provided by a different means, or because the use of proposed Lot 2A for the deer constitutes a "commercial" use.

Neither party has provided the Court with the Subdivision Regulations. Accordingly, Questions 1 and 2 at this time remain for trial, as the Court cannot determine whether the Subdivision Regulations preclude the creation of a subdivided parcel if it is not proposed for development, or whether they preclude the keeping of deer, confined by a fence, in this zoning district. We note that this Court does not have jurisdiction of litigation

3

of any property law issues as among the parties with regard to the interpretation of the easement. See, e.g., Appeal of Monty, Docket Nos. 7-1-04 Vtec and 47-3-04 Vtec (Vt. Envtl. Ct., Jan. 24, 2006), slip op. at 6, and cases cited therein. All that the Court can determine as to Questions 1 and 2 is whether the proposed subdivision meets whatever standards may exist in the subdivision regulations with respect to the creation of a parcel on which no improvements are proposed to be constructed, and on which deer are proposed to be kept. If Appellee-Applicants wish to renew their motion for summary judgment as to Questions 1 and 2, they must provide at least the Subdivision Regulations (and any pertinent zoning or other regulations incorporated by reference into the Subdivision Regulations).

Question 4 asks whether the Court should deny subdivision approval "because the subdivision is in violation of the easement granting access to the proposed subdivision parcel because the easement is limited to three residences?" Question 5 asks whether the Court should deny subdivision approval "because the subdivision is in violation of the easement granting access to the proposed subdivision parcel because the easement forbids commercial uses and the deer yard is a commercial use." As discussed above, the interpretation of the easement and the enforcement of any terms in the easement, beyond its relation to the Subdivision Regulations, is beyond the jurisdiction of this Court. Accordingly, Questions 4 and 5 must be dismissed.

Questions 3 and 6 relating to Appellants' shallow wells and drinking water

Question 3 asks whether the Court should deny subdivision approval under §185-5 of the Subdivision Regulations (specifically Subsection D) on the basis that "the deer yard adversely affects the wells and drinking water of Appellants." Question 6 asks whether the Court should deny subdivision approval on that basis that the proposal "does not take into account protection for the wells and water supply for Appellant[s'] homes."

4

Neither party has provided the Court with the Subdivision Regulations. Accordingly, Questions 3 and 6 at this time also remain for trial. We note again that this Court does not have jurisdiction over litigation of any property law or nuisance claims as among the parties regarding the wells or water supply, including any filed under the private right of action under 10 V.S.A. §1410. All that the Court can determine as to these questions is whether the proposed subdivision meets whatever standards may exist in the Subdivision Regulations with respect to protection of shallow wells serving neighboring property. If Appellee-Applicants wish to renew their motion for summary judgment as to these questions, they must provide at least the Subdivision Regulations (and any pertinent zoning or other regulations incorporated by reference in the Subdivision Regulations).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the Appellee-Applicants' Motion for Summary Judgment is GRANTED with respect to Questions 4 and 5 of the Statement of Questions, which are hereby dismissed, and is DENIED with respect to Questions 1, 2, 3 and 6 of the Statement of Questions, which remain for trial or for renewed motions for summary judgment. A conference has been scheduled (see enclosed notice) to determine whether to order mediation on the remaining issues, and whether to set a trial date or a further motion schedule for the remaining issues should mediation be unsuccessful.

Done at Berlin, Vermont, this 24th day of April, 2007.

_____
Merideth Wright
Environmental Judge

5